# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BRUCE N. BROWN,
    Petitioner,

 v.           Case No. 06C0753

STEVE WATTERS,
    Respondent.

## DECISION AND ORDER

Pro se petitioner Bruce N. Brown, who is civilly committed as a violent sexual offender under Wis. Stat. Ch. 980, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleges that his confinement violates his right to substantive due process of law because it is based on "mental disorders" – Paraphilia-Not Otherwise Stated ("NOS")-Nonconsent and Antisocial Personality Disorder ("APD") – that are insufficient to justify his loss of liberty. This is so, petitioner asserts, because Paraphilia-NOS-Nonconsent is not recognized by the medical community and APD is over inclusive.

## I. BACKGROUND

In 1984, a Wisconsin court convicted petitioner of first-degree sexual assault and endangering safety and sentenced him to twenty years in prison. In 1996, petitioner was paroled, but later his parole was revoked. In 1998, as petitioner was approaching his release date, Wisconsin petitioned to civilly commit him under Ch. 980. At petitioner's commitment trial, the state called psychologist Dennis Doren as an expert witness. Doren testified that he diagnosed petitioner with Paraphilia-NOS-Nonconsent and APD. He testified that Paraphilia-NOS-Nonconsent led petitioner to experience "recurrent, intense

sexual fantasies, sexual urges, and/or behaviors involving" nonconsenting persons and that it affected petitioner's ability to make decisions and made it difficult for him to control his behavior. (Answer Ex. B at 8.) As to APD, Doren defined the disorder as a pattern of behavior showing disregard for the rights of others and involving impulsive actions. He testified that petitioner had shown that, due to the APD, "either he can't control himself, or he doesn't care about what he's doing to the victims." (Id. at 8-9.) On cross-examination, Doren stated that he had coined the Paraphilia-NOS-Nonconsent diagnosis. He testified that neither the diagnostic manual of mental disorders (the DSM-IV-TR) nor any professional associations for psychologists recognized a diagnosis by that name. A defense witness testified that Paraphilia-NOS-Nonconsent was not a proper diagnosis.

The trial court instructed the jury that before declaring petitioner to be a sexually violent person, it would have to find that petitioner had been convicted of a sexually violent offense, that he had a mental disorder and that his disorder made him dangerous to others. It stated that a mental disorder is:

> a condition affecting the emotional or volitional capacity that predisposes a person to engage in acts of sexual violence and causes serious difficulty in controlling behavior. Mental disorders do not include merely deviant behaviors that conflict with prevailing societal standards. . . . You are not bound by medical opinions, labels, or definitions.

(Id. at 16.) The jury found petitioner to be a sexually violent person and the Milwaukee County Circuit Court committed him.

Petitioner appealed to the state court of appeals, arguing that the admission of hearsay evidence and actuarial evidence violated his right to due process, the trial court erred in not providing a special verdict form, and his commitment violated due process

2

because the state failed to prove any overt act indicating dangerousness. The state court of appeals affirmed and the state supreme court denied review.

On July 12, 2006, petitioner filed the present action. On July 23, 2007, I found that petitioner had failed to exhaust his state remedies and stayed the case so that petitioner could present his claims to the state courts. Petitioner filed a motion in state court, and that court promptly dismissed it after noting that state habeas relief was unavailable to Ch. 980 committees and that, even if habeas relief were available, petitioner had shown no good reason for failing to raise his constitutional claims on direct appeal. After the parties notified me of the state court's order, I reopened the case and ordered them to submit additional materials relevant to the issue of procedural default.

## II. DISCUSSION

It is clear that petitioner procedurally defaulted his constitutional claims and petitioner offers no reasonable argument to the contrary. "When a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates: (1) cause for and actual prejudice arising from failing to raise the claim as required, or (2) that enforcing the default would lead to a fundamental miscarriage of justice." Gomez v. Jaimet, 350 F.3d 673, 679 (7th Cir. 2003) (internal quotation marks omitted). Petitioner asserts that he did not default his claims, rather his public defender defaulted his claims. I interpret this as an attempt on the part of petitioner to establish "cause" for his default, given that a petitioner may do so by demonstrating that his appellate counsel was ineffective. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). However, "a procedurally defaulted ineffective-assistance-of-counsel claim can serve as cause to excuse the procedural default of another habeas claim only if the habeas

3

petitioner can satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." Id.; Lewis v. Sternes, 390 F.3d 1019, 1026 (7th Cir. 2004). Petitioner has not exhausted a claim that his appellate counsel was ineffective and he has not argued that he can show good cause for this default.

Petitioner also argues that he has suffered a fundamental miscarriage of justice. The fundamental miscarriage of justice exception applies when a petitioner can prove that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). The Supreme Court has suggested that a petitioner must make such a showing with reference to new evidence that was either not available at the time of trial or not presented at trial. Schlup v. Delo, 513 U.S. 298, 329 (1995). Thus, the Seventh Circuit has stated that, "without new evidence of innocence, even a meritorious constitutional claim is not sufficient to allow a habeas court to reach the merits of a procedurally defaulted claim." United States ex rel. Bell v. Pierson, 267 F.3d 544, 551-52 (7th Cir. 2001); see also Gomez, 350 F.3d at 679-80 (discussing the kind of evidence that qualifies as "new evidence"). The requirement of new evidence, developed in criminal cases, seems inappropriate as applied to a civil committee. In a civil commitment trial, the question is whether the defendant has a mental disorder that renders him dangerous. In this context, it is hard to imagine that anything could constitute "new evidence of innocence." Thus, it would make sense to modify the standard for civil committees challenging their commitments.

In the present case, though, I need not resolve this issue. Although in staying this case, I found that it was not absolutely clear that petitioner could not show entitlement to relief, upon further reflection on the applicable law, I am satisfied that petitioner's claims

4

fail on the merits. The Due Process Clause has a substantive component that bars "arbitrary, wrongful government actions." Foucha v. Louisiana, 504 U.S. 71, 80 (1992). The Supreme Court has found involuntary civil commitment of a particular class of violent offenders to be consistent with due process only when:

> (1) the confinement takes place pursuant to proper procedures and evidentiary standards, (2) there is a finding of dangerousness either to one's self or to others, and (3) proof of dangerousness is coupled with the proof of some additional factor, such as a mental illness or mental abnormality.

Kansas v. Crane, 534 U.S. 407, 409-10 (2002) (internal quotation marks omitted).

A state has wide latitude in defining a term like "mental illness" or "mental abnormality." Id. at 410. However, the definition must "distinguish the dangerous sexual offender whose serious mental illness, abnormality, or disorder subjects him to civil commitment from the dangerous but typical recidivist convicted in an ordinary criminal case." Id. at 413. In order to do so, the state must minimally show that an offender experiences difficulty controlling his violent behavior. Id. at 412-13; see also Kansas v. Hendricks, 521 U.S. 346, 358 (1997) (stating that requiring states to prove not only dangerousness but also mental illness "serve[s] to limit involuntary civil confinement to those who suffer from a volitional impairment rendering them dangerous beyond their control"); State v. Post, 197 Wis. 2d 279, 306 (1995) (stating that

> [t]he key to the constitutionality of the definition of mental disorder in chapter 980 is that it requires a nexus – persons will not fall within chapter 980's reach unless they are diagnosed with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence. Not all persons who commit sexually violent crimes can be diagnosed as suffering from mental disorders, nor are all persons with a mental disorder predisposed to commit sexually violent offenses.)

It need not be "impossible" for the committee to control his behavior, but it must be "difficult." Crane, 534 U.S. at 411.

Thus, one could say that the "legal" definition of mental illness, in a commitment case such as petitioner's, is a predisposition to commit violent acts and difficulty controlling such predisposition. This may or may not coincide with any particular psychological or medical diagnosis. See Hendricks, 521 U.S. at 359 (stating that "legal definitions" regarding mental illness "need not mirror those advanced by the medical profession"); Post, 197 Wis. 2d at 306 (discussing the "imperfect fit" between the law and clinical labels in the DSM-IV-TR in the context of a Ch. 980 challenge). Thus, a diagnosis that is not generally recognized in the medical community may be sufficient to satisfy due process concerns and, conversely, a diagnosis that is widely recognized may be insufficient. See State v. Klein, 124 P.3d 644, 656-57 (Wash. 2005) (Sanders, J., dissenting) (arguing that drug addition should not be considered a mental disease for commitment purposes even though it is included in the DSM-IV-TR).

As stated, petitioner claims that Wisconsin violated his right to substantive due process by committing him based on a diagnosis of Paraphilia-NOS-Nonconsent because it is not a medically recognized disorder. Doren testified that Paraphilia-NOS-Nonconsent caused petitioner to experience difficulty controlling his pathological impulses to have sex with non-consenting individuals and rendered him dangerous. I presume that petitioner believes otherwise; he thinks that he can control himself. However, the fact that the DSM-IV-TR does not refer to a specific disorder called "Paraphilia-NOS-Nonconsent" and the fact that other experts do not recognize the disorder do not necessarily indicate that petitioner can control himself. That was the issue for the jury to resolve. Because the jury

6

resolved the issue in favor of the state, petitioner's confinement does not violate the Due Process Clause.

This is not to say that anything goes. I presume that a psychologist could render an opinion that an individual has a disorder characterized by an inability to avoid criminal behavior that is so irrational or unpersuasive that it would not support indefinite civil commitment consistent with the Due Process Clause. However, this case does not present such a diagnosis. While the name "Paraphilia-NOS-Nonconsent" may be novel, the diagnosis appears to be consistent with recognized diagnostic principles. The DSM-IV-TR includes a disorder called "Paraphilia Not Otherwise Specified," which includes "Paraphilias that do not meet the criteria for any of the specific categories." American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders, Text Revision</u> (DSM-IV-TR) 576 (4th ed. 2000). And it states that "[t]he essential features of a Paraphilia are recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving 1) nonhuman objects; 2) the suffering or humiliation of oneself or one's parner, or 3) children <u>or other nonconsenting persons</u> that occur over a person of at least 6 months. <u>Id.</u> at 566 (emphasis added). Courts have upheld other Wisconsin commitments based on a diagnosis of non-specified paraphilia involving a predisposition to commit rape, <u>McGee v. Bartow</u>, Case No. 06-C-1151, 2007 U.S. Dist. LEXIS 62470, at *6-8 (E.D. Wis. Aug. 23, 2007); <u>Johnson v. Hunter</u>, No. C 05-02064 SI, 2006 U.S. Dist. LEXIS 66455, at *5-6 (N.D. Cal. Aug. 31, 2006); <u>Post</u>, 197 Wis. 2d at 119, and other states have committed individuals on the basis of such a diagnosis, <u>see, e.g.</u>, <u>Seling v. Young</u>, 531 U.S. 250, 255 (2001); <u>Neely v. Hayman</u>, Civil Action No. 06-5190 (PGS), 2007 U.S. Dist. LEXIS 67283, at *4-5 (D.N.J. Sept. 12, 2007).

Because petitioner's first claim fails, his second claim – that the diagnosis of APD is insufficient to support his commitment because it is over inclusive – also fails. The Seventh Circuit has stated that a diagnosis of APD can justify commitment where there is a finding that his mental disorder would likely cause him to be dangerous in the future. Adams v. Bartow, 330 F.3d 957, 962-63 (7th Cir. 2003); see also McGee, 2007 U.S. Dist. LEXIS 62470, at *6-8 (finding that Adams precluded a claim very similar to petitioner's, involving a diagnosis of Paraphilia-NOS and APD). In the present case, I previously found that if petitioner prevailed on his first claim, he might also prevail on his second claim because it was not clear whether the jury made its finding of future dangerousness with respect to the first or second diagnosis. However, given my resolution of petitioner's first claim, regardless of whether the jury believed that Paraphilia-NOS-Nonconsent or APD or some combination of the two disorders made petitioner dangerous, its finding was sufficient to render petitioner's subsequent commitment constitutional.

As such, petitioner has procedurally defaulted his claims and, in any case, they fail on the merits.

### III. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that Bruce N. Brown's petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that the present action is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 17 day of December, 2007.

/s_____
LYNN ADELMAN
District Judge